EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hernán Tenorio Betancourt y otros<br><br>Peticionarios<br><br>v.<br><br>Hospital Dr. Pila de Ponce y otros<br><br>Recurridos | Certiorari<br><br>2003 TSPR 112<br><br>159 DPR _____ |

Número del Caso: CC-2002-611

Fecha: 30 de junio de 2003

Tribunal de Circuito de Apelaciones:
                         Circuito Regional V

Juez Ponente:
                         Hon. Mildred G. Pabón Charneco

Abogado de la Parte Peticionaria:
                         Lcdo. Juan R. Rodríguez

Abogado de la Parte Recurrida:
                         Lcdo. Dennis J. Cruz Pérez

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Hernán Tenorio Betancourt
y otros

    Peticionarios

       v.                         CC-2002-611

Hospital Dr. Pila de Ponce
y otros

    Recurridos


Opinión del Tribunal emitida por la Jueza Asociada señora NAVEIRA DE RODÓN


San Juan, Puerto Rico a 30 de junio de 2003


El 19 de septiembre de 2000, Hernán Tenorio Betancourt, Sonia Conesa Alfonso y Kristal Idali Colón Tenorio presentaron ante el Tribunal de Primera Instancia, Sala Superior de Ponce, una demanda contra el Hospital Dr. Pila de Ponce, Sala de Emergencia del Hospital Dr. Pila, el Dr. Juan Yordán Frau y su esposa y la sociedad legal de gananciales compuesta por ambos.[1] Reclamaron daños y perjuicios por impericia médica relacionada con el tratamiento recibido el 3 de enero de 1998 por la menor Dinayra Tenorio Conesa en las

---

[1] También incluyeron en la demanda a John Doe y Richard Roe, compañías aseguradoras de nombres desconocidos de la parte demandada.

facilidades del Hospital Dr. Pila de Ponce.[2]  Alegaron

que dicha menor murió el mismo 3 de enero de 1998 debido

al tratamiento médico inadecuado que le brindaron los

demandados en las facilidades del Hospital Dr. Pila.

Luego de una serie de trámites procesales, incluyendo varias enmiendas a la demanda, los demandados presentaron tres (3) mociones de sentencia sumaria basadas en la defensa de prescripción. Los demandantes oportunamente se opusieron a éstas.  En la última de las mociones de sentencia sumaria, los demandados plantearon, por primera vez, que por los mismos hechos los demandantes, previamente, el 30 de diciembre de 1998, habían presentado otra demanda reclamando daños, Civil JDP1998-0556.  En cuanto a los actos negligentes que supuestamente causaron los daños, específicamente alegaron lo siguiente:

> CUARTO: El día 3 de enero del pasado año 1998 la joven Dinayra Tenorio Conesa fue llevada por su padre al Hospital Dr. Pila la cual [sic] fue atendida en la Sala de Emergencia de dicha institución.  En esa ocasión presentaba un dolor abdominal, acudió para solicitar servicios de dicha institución hospitalaria.

> QUINTO: Cuando estaba siendo atendida en la Sala de Emergencia del Hospital Dr. Pila, bajo los servicios del demandado DR. JUAN YORDAN FRAU **la menor Dinayra Tenorio Conesa falleció porque el médico demandado, los agentes ostensibles o personal autorizado de la institución y/o del contratista independiente de la Sala de Emergencia y/o el personal que directamente atendió a la menor no le brindó un tratamiento adecuado o de excelencia**

---

[2]     La menor Dinayra Tenorio Conesa era la hija de los demandantes Hernán Tenorio Betancourt y Sonia Conesa Alfonso y la madre de Idalia Colón Tenorio.  A la fecha de su muerte Dinayra tenía diecinueve (19) años.

**profesional, y/o no supo manejar a la menor como paciente.**

SEXTO: Como resultado de la negligencia imputable a las personas naturales y jurídicas antes referidas **la menor Tenorio Conesa de 19 años de edad falleció, siendo la causa directa las actuaciones negligentes de las personas antes indicadas.**

SÉPTIMO: La menor Dinayra Tenorio Conesa estuvo bajo el control y cuidado absoluto de los demandados **experimentando sufrimientos físicos en el tratamiento inadecuados [sic] que experimentó antes de morir** y de los cuales tienen derecho a suceder en dichos daños los demandantes. (Énfasis suplido.)[3]

Con relación a esta primera demanda, el 7 de septiembre de 1999 los demandantes presentaron una moción de desistimiento sin perjuicio, al amparo de la Regla 39.1(a)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. III.[4] Del expediente de este primer caso no surge que se hubiera emplazado a los demandados, ni que a éstos se les hubiese notificado documento alguno o que éstos hubiesen comparecido mediante contestación o la presentación de una moción de sentencia sumaria. El 17 de septiembre de 1999 el tribunal de instancia dictó sentencia dando a los demandantes por desistidos sin perjuicio. La mencionada sentencia fue notificada el 28 de octubre de 1999. En vista de lo anterior, y basándose en las alegaciones de

---

[3]     Recurso de *certiorari*, Apéndice XXII.

[4]     Del expediente surge que el primer abogado contratado por los demandantes después de haber presentado la demanda consultó informalmente con la doctora Claudio Lorenzo. Ella le informó que examinó los récords médicos del caso y no encontró que hubiese algo incorrecto.

la primera demanda, presentada el 30 de diciembre de 1998, el foro de instancia emitió una sentencia sumaria parcial desestimando por prescripción las reclamaciones de los demandantes mayores de edad. Inconformes con esta determinación, los demandantes afectados por la misma apelaron ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito).

El 28 de junio de 2002 el foro apelativo dictó sentencia confirmando la apelada.[5] Resolvió que:

> La fecha a partir de la cual comienza nuevamente a transcurrir el término prescriptivo de un (1) año dispuesto por el Art. 1868 del Código Civil de Puerto Rico, cuando el demandante desiste voluntariamente, sin perjuicio y con anterioridad a que la parte adversa notifique su alegación responsiva o su moción en la que solicite sentencia sumaria es la presentación ante el tribunal del **aviso de desistimiento. Este aviso pone fin al pleito y constituye, por lo tanto, la fecha a partir de la cual comienza el transcurso del nuevo término prescriptivo.** (Énfasis suplido.)[6]

Entendió el foro apelativo que la fecha para determinar cuándo los demandantes tuvieron conocimiento de que el daño había sido causado por un acto negligente de los demandados fue el 30 de diciembre de 1998, cuando radicaron la primera demanda reclamándole a éstos los daños causados por dichos actos. De esta forma rechazó la teoría de los demandantes de que el término prescriptivo comenzó a transcurrir nuevamente el 24 de

---

[5] La sentencia del Tribunal de Circuito fue notificada el 12 de julio de 2000.

[6] Recurso de *certiorari*, Apéndice I.

agosto de 2000, fecha en que el perito contratado por su segundo abogado, el Lcdo. Juan R. Rodríguez, rindió el informe pericial. El Tribunal de Circuito rechazó, además, la contención de los demandantes de que la declaración jurada prestada por el codemandante Hernán Tenorio Betancourt y el informe del perito contratado por el licenciado Rodríguez pusieron en controversia el hecho de que los demandantes tenían conocimiento de los actos negligentes al momento de presentar la primera demanda el 30 de diciembre de 1998 y que, por lo tanto, no se podía dictar sentencia sumaria en el caso de autos ya que existía controversia sobre un hecho material.

El 7 de agosto de 2002 los demandantes recurrieron de esta determinación ante nos planteando como único error que el Tribunal de Circuito incidió al determinar que la segunda demanda estaba prescrita cuando se radicó el 19 de septiembre de 2000. El 4 de octubre de 2002 le concedimos término a los demandados recurridos para que se expresaran y con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulteriores procedimientos.


II


Reiteradamente hemos resuelto "que el plazo prescriptivo para el ejercicio de las acciones de daños y perjuicios no comienza en el instante cuando se

produce la acción u omisión culposa o negligente, sino en el momento en que el perjudicado conozca que ha sufrido un daño, y sepa, además, quien es el responsable". Ojeda v. El Vocero, 137 D.P.R. 315, 325 (1994); Colón Prieto v. Geigel, 115 D.P.R. 232, 246 (1984). Este Tribunal ha enfatizado la importancia de la etapa cognoscitiva del daño indicando que es necesario distinguir entre el momento en que ocurre la consecuencia lesiva y aquel en que el perjudicado la reconozca, ya que la diferencia conlleva efectos jurídicos distintos de vital importancia, como lo es el momento cuando empieza a decursar el plazo hábil durante el cual el perjudicado puede iniciar su causa de acción reclamando los daños sufridos. Ojeda v. El Vocero, supra, Herminio M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, Vol I, San Juan, Pubs. J.T.S., 2da ed., 1986, págs. 423-427, 439-442 y 567-572.

La Regla 39.1(a)(1) de Procedimiento Civil, supra, permite a un demandante **desistir sin perjuicio**, sin orden del tribunal, simplemente mediante la presentación de un **aviso de desistimiento** "en cualquier fecha antes de la notificación por la parte adversa de la contestación o de una moción solicitando sentencia sumaria, cualesquiera de estas cosas que se notifique primero". Bajo estas circunstancias, **"[e]l tribunal ordenará obligatoriamente el archivo y sobreseimiento de**

**la acción sin discreción para obrar de otra forma.”** Rafael Hernández Colón, <u>Práctica jurídica de Puerto Rico</u>, San Juan, Michie, 1997, § 3904, pág. 275. (Énfasis suplido.)  La Regla 23C para la Administración del Tribunal de Primera Instancia, a su vez, dispone que “[e]l Secretario o la Secretaria Regional procederá a archivar cualquier acción en que la parte demandante desista antes de la notificación por la parte adversa de la contestación o de una moción solicitando sentencia suma[ria]....”  4 L.P.R.A. Ap. II-B (Supl. 2002).  Sobre la Regla 39.1(a)(1), <u>supra</u>, el comentarista Cuevas Segarra indica que **el aviso de desistimiento** causa la inmediata terminación del litigio que inició el actor desistente, pero la causa de acción o reclamación ejercitada no se extingue; puede reclamarla una vez más. **”Su completa efectividad se adquiere tan pronto se presenta en el tribunal el aviso declarativo de la voluntad de desistir; toda orden o resolución desestimatoria resulta superflua”.**  José A. Cuevas Segarra, <u>Tratado de Derecho procesal civil</u>, T. II, San Juan, Pubs. J.T.S., 2000, pág. 638.  (Énfasis suplido.)[7]

---

[7]  Cabe señalar que aún no hemos tenido la oportunidad de interpretar y armonizar las disposiciones de la Regla 39.1(a)(1) de Procedimiento Civil, <u>supra</u>, con las disposiciones de la Regla 4.3(b), <u>supra</u>, que, con relación al término de seis (6) meses para emplazar, dispone específicamente que “[t]ranscurrido el término original o su prórroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por **desistida, con perjuicio”.**  (Énfasis suplido.)

Sobre este particular, en <u>García Aponte et al.</u> v.

<u>E.L.A.</u>, 135 D.P.R. 137, 145 (1994), resolvimos lo

siguiente:

> **[L]a presentación del aviso de desistimiento ante el tribunal pone fin al pleito y constituye, por lo tanto, la fecha a partir de la cual comienza el transcurso del nuevo término prescriptivo. La expresión inequívoca de la voluntad de desistir es el momento determinante *de que cesó* el efecto interruptivo de la acción judicial. Los eventos posteriores a tal manifestación de voluntad, como la fecha en que el tribunal dicta sentencia, la archiva y notifica o ésta adviene final y firme, nada tienen que ver con que surta efecto dicha expresión de voluntad y, por consiguiente, resultan impertinentes.** (Énfasis suplido.)

En cuanto a las alegaciones en la demanda, éstas

tienen el propósito de bosquejar la controversia a

grandes rasgos para así notificarle a la parte demandada

la reclamación que se está aduciendo en su contra, de

manera que pueda comparecer a defenderse de la misma si

así lo desea.  Regla 6.5(a) de Procedimiento Civil, 32

L.P.R.A. Ap. III, <u>supra</u>; <u>Moa</u> v. <u>E.L.A.</u>, 100 D.P.R. 573

(1972); <u>Sierra</u> v. <u>Tribunal Superior</u>, 81 D.P.R. 554

(1959).

En la etapa inicial de un caso, al presentar la

demanda el demandante no está obligado a alegar hechos

probatorios, o sea, "no tiene que exponer con detalle

todos los hechos en que basa su reclamación.  Basta con

una alegación corta, clara, simple, concisa y directa".

Cuevas Segarra, <u>supra</u>, en la pág. 206.  Las alegaciones

presentan al tribunal sólo los hechos esenciales para la

aplicación del derecho. "Basta con alegar el último hecho, o el hecho que produce las consecuencias jurídicas relevantes al proceso.... En una demanda lo único que hay que alegar son los hechos que dan lugar a la reclamación". Hernández Colón, supra, en la § 2301, pág. 179.

De otra parte, la Regla 9 de Procedimiento Civil, supra, dispone que "[la] firma de un abogado equivale a certificar el haber leído el escrito; que de acuerdo a su mejor conocimiento, información y creencia está bien fundado; y que no ha sido interpuesto para causar demora u opresión". Esta responsabilidad se hace extensiva a la parte que comparece. Cabe señalar que en repetidas ocasiones hemos reconocido y hecho hincapié sobre las responsabilidades y deberes del abogado no sólo para con sus clientes, sino también para con el sistema judicial. Comentario a la Regla 9, supra; In re: Siverio Orta, 117 D.P.R. 14 (1986). La responsabilidad que le impone la Regla 9, supra, a un abogado es una no sólo de carácter procesal, sino que también constituye una norma de carácter ético.

Reiteradamente hemos resuelto que como "regla general y en ausencia de circunstancias que justifiquen lo contrario, todo litigante que escoge libremente un abogado para que lo represente en un litigio no puede evitar las consecuencias de los actos u omisiones de tal agente". Srio. Del Trabajo v. J.C. Penney Co., Inc.,

119 D.P.R. 660, 671 (1987). Debe "considerarse que [el litigante] ha tenido aviso de todos los hechos y actos que le han sido notificados a su abogado". Díaz v. Tribunal Superior, 93 D.P.R. 79, 88 (1966); Maldonado v. Srio. de Rec. Naturales, 113 D.P.R. 494, 497 (1982); Méndez v. Pérez, Tribunal Superior, 101 D.P.R. 87, 93 (1973).

Pasemos ahora a aplicar las normas de derecho antes reseñadas a los hechos del caso de autos.

III

En el caso que tenemos ante nuestra consideración los actos de impericia médica que dan lugar a la reclamación ocurrieron el 3 de enero de 1998. Oportunamente, el 30 de diciembre de 1998, los demandantes presentaron una reclamación en daños ante el Tribunal de Primera Instancia. Sin lugar a dudas, esta acción tuvo el efecto de interrumpir el término prescriptivo de la acción en daños de los reclamantes mayores de edad. A tenor con las normas procesales antes expuestas, este término comenzó a decursar nuevamente el 7 de septiembre de 1999, fecha en que los demandantes presentaron ante el foro de instancia un aviso de desistimiento sin perjuicio.

A la luz de las normas de derecho previamente citadas, no podemos avalar la teoría de los demandantes

peticionarios de que tuvieron conocimiento de que se les había causado un daño por un acto negligente de los demandados el 24 de agosto de 2000, cuando el perito contratado por su segundo abogado, el licenciado Rodríguez, rindió su informe. El codemandante Tenorio Betancourt expresó mediante declaración jurada que fue el 24 de agosto de 2000, cuando leyó el informe pericial del Dr. Miguel A. López Napoleoni, el perito contratado por su segundo abogado, que se enteró que los daños sufridos fueron causados por un acto negligente de los demandados. Sin embargo, esta declaración no puso en controversia el momento en que los demandantes obtuvieron conocimiento sobre quién o quiénes habían sido los causantes del daño. Ya desde la presentación de la primera demanda, el 30 de diciembre de 1998, en la cual alegaron específicamente que los daños ocasionados a la menor Dinayra Tenorio Conesa fueron producto de la negligencia de los demandados, los demandantes peticionarios tenían conocimiento de que podían ejercitar una acción reclamando los daños causados. Su entonces abogado, el Lcdo. Francisco Toro González, firmó la demanda y los demandantes peticionarios, habiendo escogido libremente a dicho abogado para que los representara, ahora no pueden evitar las consecuencias de sus actos u omisiones.

A tenor con las normas jurisprudenciales previamente reseñadas, debemos considerar que los demandantes han

tenido aviso de todos los hechos y actos que su abogado realizara en este caso y aquellos que le fueron notificados a su abogado. Esto significa que los demandantes tenían conocimiento de las alegaciones de la primera demanda y de la consulta informal que el licenciado Toro González le hiciera a la doctora Claudio Lorenzo sobre la posible negligencia de los demandados en relación con el tratamiento que le ofrecieron a la menor Dinayra Tenorio Conesa. No podemos presumir que la primera demanda, radicada el 30 de diciembre de 1998, fue presentada sin tener base alguna para la reclamación. Al radicar esta primera demanda se interrumpió el término para presentar una acción reclamando los daños sufridos. Dicho término comenzó a decursar nuevamente cuando los demandantes presentaron, el 7 de septiembre de 1999, el aviso de desistimiento sin perjuicio ante el foro de instancia. La segunda demanda se presentó el 19 de septiembre de 2000, pasado el término de un año (1) que establece el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, para presentar las acciones para exigir responsabilidad civil por las obligaciones derivadas de la culpa o negligencia en virtud del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

Bajo las circunstancias específicas del caso de marras es forzoso concluir que por lo menos desde el 30 de diciembre de 1998 los demandantes tenían conocimiento

tanto de los daños causados como de cuándo y quién los causó.

Por los fundamentos antes expuestos confirmamos la sentencia del Tribunal de Circuito y devolvemos el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.


                                    MIRIAM NAVEIRA DE RODÓN
                                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hernán Tenorio Betancourt
y otros

    Peticionarios

       v.                                            CC-2002-611

Hospital Dr. Pila de Ponce
y otros

    Recurridos

SENTENCIA

San Juan, Puerto Rico a 30 de junio de 2003

    Por los fundamentos expuestos en la Opinión que antecede, se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente por entender que no procedía que se dictase **sentencia sumaria** aquí. Más bien, debió dilucidarse mediante vista evidenciaria la cuestión de cuándo tuvieron los demandantes conocimiento real de la impericia.

                                    Patricia Otón Olivieri
                           Secretaria del Tribunal Supremo